IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GWENDOLYN ST. CLAIR,** *individually and as parent and natural guardian of* **OLIVIA ST. CLAIR,** *a minor*,<br><br>**Plaintiff,**<br><br>v.<br><br>**BOROUGH OF NEW BRIGHTON, STEPHEN KELCH,** *in his individual and official capacity as a police office,* **RONALD HOGUE, JR.,** *in his individual and official capacity as a police officer*,<br><br>**Defendants.** | 2:16-00667-TFM |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is a MOTION TO DISMISS COMPLAINT IN PART PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6) (ECF No. 8) filed by Defendants, the Borough of New Brighton, Stephen Kelch, and Ronald Hogue, Jr., along with a brief in support (ECF No. 9). Plaintiff Gwendolyn St. Clair, individually and as parent and natural guardian of Olivia St. Clair, a minor, filed a brief in opposition (ECF No. 14); Defendants filed a reply brief (ECF No. 17). Accordingly, the motion is ripe for disposition.

I. **Background**

The following background is drawn from the Complaint, and the factual allegations therein are accepted as true for the purpose of this Memorandum Opinion. As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.

A. **Factual Background**

This case arises from events that occurred on September 23, 2014, when Defendant Police Officers Ronald Hogue, Jr. and Stephen Kelch were called to investigate a domestic

disturbance at 1510 4th Avenue, New Brighton, Pennsylvania. Contemporaneous to Defendants' arrival on the scene, Plaintiff and her nine-year-old daughter approached the residence, intending to offer shelter to the female victim. Upon approaching the victim's home, Plaintiff was stopped by Defendants Kelch and Hogue who requested that she not speak to the victim to avoid interfering with their investigation of the incident.

Plaintiff informed Defendants that she only intended to offer her assistance and shelter to the victim and her child if necessary. Plaintiff then began to walk back across the street in the direction of her home when Defendant Hogue repeatedly addressed her. Plaintiff informed Hogue that she had no intention of interfering with the investigation and was leaving the scene. Plaintiff requested that Hogue not speak to her rudely, as she was only attempting to offer assistance to a victim of domestic abuse.

Hogue then informed Plaintiff that she was being placed under arrest. Hogue grabbed Plaintiff's arm and forcefully bent it behind her back, causing her to bleed, bruise, and sustain abrasions. Hogue then forced Plaintiff to the ground, insisting that she assume a prone position. Plaintiff requested that Hogue stop and informed him that she was unable to assume the position because of her physical limitations. Hogue then employed his Taser on Plaintiff twice while continuing to force her toward a prone position. Olivia, Plaintiff's nine-year-old daughter, watched from the sidewalk as the incident unfolded. At one point, Hogue instructed Plaintiff to make her daughter "stop crying."

Plaintiff was handcuffed and transported to New Brighton Police Department where she was detained for approximately one hour. As a result of the altercation between Plaintiff and Officer Hogue, Plaintiff suffered numerous injuries to her arm, wrist, spine and foot, as well as

pain and suffering. Olivia allegedly sustained psychological and emotional injury, including recurring nightmares.

### B. Procedural History

Plaintiff commenced this action on May 24, 2016 by filing a three-count Complaint, alleging a Fourth Amendment violation, a First Amendment violation, and a *Monell* claim. Under the umbrella of those three counts, however, Plaintiff also makes reference to violations of her Fifth and Eighth Amendment rights,[1] a state law Intentional Infliction of Emotional Distress ("IIED") claim against Defendants Hogue and Kelch made on behalf of her minor daughter, and a private right of action for deprivation of rights under the Pennsylvania Constitution. Making matters worse, Plaintiff initially states, in her response, that her Complaint only sets forth "two causes of action:" (1) a claim against the individual defendant police officers "for violation of Plaintiff's constitutional rights to be free from illegal and unreasonable searches and seizures;" and (2) a *Monell* claim against the Borough of New Brighton, "which is premised upon its failure to adequately train, supervise and discipline the individual police officers employed within the New Brighton Police Department." (ECF No. 14 at 1). A few pages later, she then states that her Complaint "set forth three counts: (1) a claim against the individual Defendant police officers (Kelch and Hogue) for excessive and unreasonable force under 42 U.S.C. § 1983, in addition to the Fourth and 14th Amendments of the United States Constitution, (2) a claim for deprivation of Plaintiff's rights to free speech and association under 42 U.S.C. § 1983 and the First and 14th Amendments to the United States Constitution; and (3) a *Monell* claim for municipal liability against the Borough of New Brighton pursuant to 42 U.S.C. § 1983."

---

1 "Plaintiff concedes that neither the Fifth nor the Eighth Amendment to the United States Constitution are applicable to [her] claims." (ECF No. 14 at 14).

Not surprisingly, Defendants move to dismiss all of Plaintiff's claims set forth in her Complaint, except for the Fourth Amendment claim of excessive/unreasonable force against Defendant Hogue. Plaintiff opposes the relief sought.

**II. Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint, which may be dismissed for the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Upon review of a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States has made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007).

The Supreme Court later refined this approach in *Ashcroft v. Iqbal*, emphasizing the requirement that a complaint must state a plausible claim for relief in order to survive a motion to dismiss. 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 555). Nevertheless, "the plausibility standard is not akin to a 'probability requirement,'" but requires a plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 555).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must take a three step

4

approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must "tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Accordingly, the Court must separate the factual and legal elements of the claim and "accept the factual allegations contained in the Complaint as true, but [ ] disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57; *Burtch*, 662 F.3d at 220-21). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Iqbal* 556 U.S. at 678). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6) and the requirements of Rule 8 must still be met. *See*

*Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). The Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 553). Rule 8 also still requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (citing Fed. R. Civ. P. 8(a)(2)). While this standard "does not require 'detailed factual allegations,' [ ] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 544-55). Simply put, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

### III. Discussion

In light of Plaintiff's style of pleading, the Court will liberally construe her Complaint and review the legal sufficiency of the following: (1) a First Amendment claim against Defendants Hogue and Kelch; (2) a Fourth Amendment claim against Defendant Kelch; a (3) a municipal liability claim against the Borough of New Brighton; (4) an IIED claim made on behalf of her minor daughter; and (5) a claim for deprivation of rights under the Pennsylvania Constitution.

#### A. First Amendment Claim Against Kelch and Hogue

Plaintiff asserts that Defendants Kelch and Hogue unlawfully deprived Plaintiff of her rights to free speech and association secured by the First Amendment to the United States Constitution. Plaintiff claims that she was acting as a "Good Samaritan" and that it was this

attempted communication by Plaintiff that "ultimately provoked and motivated the excessive unreasonable abuse response from the individual Defendant police officers." (ECF No. 14 at 6).

In response, Defendants claim that Plaintiff's attempt to speak with the third-party victim is not protected activity under the First Amendment. Rather, they argue that the officers were entitled to handle the incident without interruption by third parties, "so as to ensure their own safety and that of the alleged victim." (ECF No. 9 at 7).

At this stage, the Court finds it is not appropriate to dismiss Plaintiff's First Amendment claim(s) against Defendants Hogue and Kelch. From their filings, it appears that the parties dispute whether or not Plaintiff "interfered" with the police investigation of the third party incident or was merely offering "assistance (shelter) and in no way attempted to interfere." (ECF No. 14 at 7). Further, Plaintiff contends that when she was requested to stop speaking to the third party victim, she promptly began to walk away. Plaintiff asserts that it was Defendant Hogue that continued to confront her even after she began to cross the street back towards her residence. These facts, taken in the light most favorable to Plaintiff, do not suggest that Plaintiff was "interfering" with a police investigation. As such, the Court finds that it is premature to dismiss Plaintiff's First Amendment claim at this time. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amendment Claim for Defendants Hogue and Kelch will be denied.

### B. Fourth Amendment Claim Against Hogue

Plaintiff contends that Defendant Kelch acted in concert with Defendant Hogue to violate Plaintiff's rights guaranteed under the Fourth Amendment to the United States Constitution. Plaintiff does not allege *how* Defendant Kelch acted in concert to cause her injuries or what evidence she has to support this broad assertion. Indeed, the facts raised in her Complaint do not suggest *any* involvement from Defendant Kelch, aside from the fact that he was present when

Defendant Hogue "assault[ed], taser[ed], detain[ed], and brutaliz[ed]" Plaintiff in front of her nine-year-old daughter. (ECF No. 1 ¶35).

Plaintiff recognizes her failure to state a claim against Defendant Kelch in this regard. As she states in her response, "Plaintiff submits she can supply sufficient detailed allegations as to the participation of Defendant Kelch to satisfy the pleading requirements and hereby requests leave to submit an Amended Complaint to address that issue." (ECF No. 14 at 10).

In light of this request, the Court will grant the motion to dismiss, as well as leave to amend. To be sure, if a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

### C. Municipal Liability Claim against the Borough of New Brighton

Plaintiff also avers that the Borough of New Brighton should be held liable for the actions of Defendants Hogue and Kelch based on a municipal liability theory under *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 638 (1978). Plaintiff avers that Defendants Hogue and Kelch acted pursuant to "policies and practices" of the Borough of New Brighton and the New Brighton Police Department ("NBPD") which were "implemented through the direct participation and approval of the Borough of New Brighton Borough council and/or the NBPD Chief of Police." (ECF No. 1 at 11). Additionally, Plaintiff argues that these policies and/or customs fostered unconstitutional conduct by police officers, and that because of those policies Defendants Hogue and Kelch violated Plaintiff's constitutional rights. Plaintiff contends that these policies and/or customs demonstrate a deliberate indifference on the part of the Borough's policymakers to the constitutional rights of persons within the Borough. At the

same time, Plaintiff has not pled any facts regarding the existence of these policies and practices, nor has Plaintiff alleged what, exactly, these policies and practices entailed.

Relevant here, a municipality must have "caused" the deprivation of a constitutional right; the mere existence of an employer-employee relationship will not form the basis for municipal liability under Section 1983. *Monell*, 436 U.S. at 692 "In particular, a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original).

Against this backdrop, the Court must dismiss Plaintiff's municipal liability claim against the Borough of New Brighton. Plaintiff has only alleged the existence of some policies and/or customs carried out by the Borough of New Brighton and the NBPD, but has not pled any facts to support this conclusion. Indeed, Plaintiff has not shown through any factual allegations that such policies and practices even exist. Rather, she merely asks the Court to speculate that because this incident occurred with two Borough of New Brighton police officers, there is a policy and/or custom in place that condones unconstitutional behavior.

And while Plaintiff claims the Borough of New Brighton's "deliberate indifference" toward her constitutional rights caused her injuries, Plaintiff still has not pled any facts to support the allegation that a policy of such deliberate indifference exists. Generally, courts hold that liability under Section 1983 may attach to a municipality under a deliberate indifference theory "'where – and only where – a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality)). In *Canton*, the plaintiff claimed that a failure to train police officers showed deliberate indifference by the

municipality, and the Court held that liability under Section 1983 may only attach where the "inadequacy [in training was] *so likely* to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390 (emphasis added). Here, Plaintiff has not presented the Court with any facts to support her claim that the municipality exhibited deliberate indifference. Instead, she merely concludes that such deliberate indifference existed. Such allegations will not pass muster in the face of a motion to dismiss. Accordingly, Defendant's motion to dismiss regarding this claim will be granted.

### D. IIED Claim[2]

Defendants contend that Plaintiff has failed to state a claim for IIED. As the Third Circuit Court of Appeals has recognized, "Pennsylvania courts have been cautious in permitting recovery for [IIED]." *Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (citing *Bradshaw v. Gen. Motors*, 805 F.2d 110, 114 (3d Cir. 1986)). In fact, the Pennsylvania Supreme Court has never actually recognized IIED as a tort. *See Hoy v. Angelone*, 720 A.2d 745, 754 n.10 (Pa. 1998). It has, however, explained that if it were to allow recovery for IIED, a plaintiff would have to establish that the defendant(s) engaged in "extreme and outrageous conduct," which "intentionally or recklessly causes severe emotional distress to another . . . ." *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (citing *Restatement (Second) of Torts* § 46). The Pennsylvania Supreme Court has also opined that if IIED was ever to be recognized, "at the very least, competent medical evidence [is] required to support a claim[.]" *Hoy*, 720 A.2d at 754 (citing *Kazatsky*, 527 A.2d at 995).

---

2. In their reply brief, Defendants withdraw their jurisdictional challenge to the IIED claim. They do, however, still contend that this claim is legally insufficient.

In the Complaint, Plaintiff claims that, "[defendants] assaulted, tasered, detained, humiliated, and brutalized St. Clair in the presence of her then 9-year-old daughter, Olivia." (ECF No. 1 ¶31). Further, the Complaint reads, "as a direct and proximate result of the foregoing, Olivia St. Clair was subjected to great emotional distress and humiliation and otherwise damaged and injured." (ECF No. 1 ¶38). The Complaint also identifies that Olivia was crying during the incident and now suffers from emotional and psychological injury, including recurring nightmares. (ECF No. 1 ¶21, 24).

These allegations are sufficient to state a claim for IIED at this stage. *See, e.g., Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) (holding that plaintiff stated a claim for IIED where "his psychological injuries as a result of this incident have 'manifested themselves physically in the form of financial loss, sleep deprivation, reoccurring nightmares and other physically disabling manifestations'"); *Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992) (holding that "alleged physical manifestations of emotional suffering, i.e. depression, nightmares, stress, and anxiety" were sufficient). Of course, Plaintiff will eventually "need to substantiate these allegations with competent medical evidence, either at trial or at summary judgment if Defendants so move." *Sullivan v. Warminster Twp.*, No. CIV.A.07-4447, 2010 WL 2164520, at *10 (E.D. Pa. May 27, 2010) (citing *Kazatsky*, 527 A.2d at 995; *Silver v. Mendel*, 894 F.2d 598, 607 n.19 (3d Cir. 1990)). At this stage, however, Plaintiff has pled enough to allow her IIED claim to proceed to discovery. *See Silver*, 894 F.2d at 607 n.19 (concluding that plaintiff's allegations of emotional distress were "sufficient . . . to withstand a motion to dismiss," though objective proof of emotional distress would be required "to survive a motion for summary judgment"). Accordingly, Defendants' motion to dismiss Plaintiff's IIED claim against Hogue and Kelch made on behalf of her minor daughter will be denied.

### E. Claims under the Pennsylvania Constitution

In her Complaint, Plaintiff states that "[t]his is a civil rights action in which St. Clair, seeks relief for the defendants' violations of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, *by the laws and Constitution of the Commonwealth of Pennsylvania*." (ECF No. 1 ¶1) (emphasis added). Defendants argue that Pennsylvania courts do not recognize a cause of action for damages arising out of alleged violations of the Pennsylvania Constitution. (ECF No. 9). In response, Plaintiff asks this Court to guess what the Pennsylvania Supreme Court would decide when faced with this issue.

"Pennsylvania law does not include a statutory equivalent to 42 U.S.C. §1983, which provides a cause of action for damages because of a federal constitutional violation." *Underwood v. Beaver Cty. Children & Youth Servs.,* 2007 WL 3034069, at *2 (W.D. Pa. Oct. 7, 2007). At the same time, however, "the question of whether the Pennsylvania Constitution provides a cause of action for damages is uncertain." *Id.* (citation omitted). The great majority of courts that have weighed-in on the issue have nevertheless concluded that money damages are not available. *Id.* n.1 (collecting cases); *see also Hellmann v. Kercher,* 2009 WL 586511, at *5 (W.D. Pa. Mar. 6, 2009) (same). The Court finds the referenced decisions persuasive, and it will follow that approach. As such, Plaintiff's claim for monetary damages based upon the Pennsylvania Constitution fails as a matter of law. Accordingly, the motion to dismiss the claims against Defendants Hogue and Kelch brought under the Pennsylvania Constitution will be granted.

### IV. Conclusion

For the reasons hereinabove stated, the Court will grant in part and deny in part Defendants'' motion and dismiss (1) Plaintiff's Fourth Amendment claim against Defendant Kelch; (2) Plaintiff's municipal liability claim against the Borough of New Brighton; (3)

Plaintiff's claims brought under the Pennsylvania Constitution; and (4) any claims brought under the Fifth and Eighth Amendment to the United States Constitution.  The Court will, however, grant Plaintiff's request for leave to amend her civil rights claims.  An appropriate Order follows.


                                                                                    McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GWENDOLYN ST. CLAIR,** *individually and as parent and natural guardian of* **OLIVIA ST. CLAIR,** *a minor*, <br><br> **Plaintiff,** <br><br> v. <br><br> **BOROUGH OF NEW BRIGHTON, STEPHEN KELCH,** *in his individual and official capacity as a police office*, **RONALD HOGUE, JR.,** *in his individual and official capacity as a police officer*, <br><br> **Defendants.** | 2:16-00667-TFM |

## ORDER OF COURT

AND NOW, this 18th day of August, 2016, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS COMPLAINT IN PART PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6) (ECF No. 8) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff shall file an Amended Complaint on or before September 1, 2016.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge
